CARL WILLIAM POOR AND WIFE, RUBY N. POOR, AND CARL A. ROSE AND WIFE, MARIE K. ROSE, PLAINTIFFS v. BEVERLY J. HILL AND HUSBAND, GARY A. HILL, SR., AND SEA GATE ENTERPRISES, DEFENDANTS

No. COA98-1494

(Filed 16 May 2000)

**1. Contracts— breach—real estate closing—readiness to perform**

The trial court did not err by denying defendant's directed verdict and JNOV motions on defendant-Mr. Hill's breach of contract claims arising from the failure of a real estate transaction to close where the evidence, taken in the light most favorable to

POOR v. HILL

[138 N.C. App. 19 (2000)]

plaintiffs, indicates that plaintiffs were ready and willing to perform at all times and the defendants breached the contracts.

**2. Unfair Trade Practices— real estate sale—failure to close**

The trial court did not err by denying defendants' JNOV motion on an unfair and deceptive trade practice claim arising from the failure of a real estate transaction to close and the resale of the property by defendants where it was undisputed that quitclaim deeds from another party were not signed until December 1994, providing support for the jury's answer that defendant-Mr. Hill knew he was not in a position to perform the contract with plaintiffs on 22 September, when defendants declared plaintiffs in default on their offer, having already resold the property at a higher price.

**3. Unfair Trade Practices— real estate sale—failure to close—resale**

The trial court did not err by determining that defendants' acts surrounding a real estate transaction which failed to close constituted an unfair or deceptive trade practice, given the deceptive nature of the male defendant's letter to plaintiffs, his imposition of an increased price upon the lots and entry into sales contracts with third parties, and his retention of plaintiffs' earnest money deposits.

**4. Contracts— breach—liability of spouse**

The trial court erred by granting a directed verdict in favor of defendant-Mrs. Hill on a breach of contract claim arising from the failure of a real estate transaction to close where Mr. Hill testified that he and Mrs. Hill did business and sold lots in Sea Gate under the name Sea Gate Enterprises; that the Sea Gate Enterprises operating account, into which plaintiffs' earnest money payments had been deposited following withdrawal from defendants' trust accounts, was maintained in the name of Mr. and Mrs. Hill; both Mr. and Mrs. Hill were required to obtain quitclaim deeds from Weyerhaeuser; and Weyerhaeuser ultimately conveyed its interest in the three lots to both Mr. and Mrs. Hill.

**5. Unfair Trade Practices— real estate sale—failure to close—liability of spouse**

The trial court erred by granting a directed verdict for defendant-Mrs. Hill on an unfair and deceptive trade practices claim arising from the failure of a real estate sale to close where

defendants contended that the evidence focused upon the actions of Mr. Hill, but the evidence, taken in the light most favorable to plaintiffs, tended to show that Mr. Hill was at all times acting as agent for Mrs. Hill during the course of his dealings with plaintiffs regarding the lots at issue.

### 6. Unfair Trade Practices— breach of real estate sales contract—damages

The trial court erred in a claim for unfair and deceptive trade practices arising from a real estate transaction which did not close by setting aside the jury's Chapter 75 damage award and substituting the sum imposed for breach of contract upon a finding that a portion of the verdict was against the greater weight of the evidence. The proper remedy for a verdict against the greater weight of the evidence is a new trial on the issue of damages, and damages on a Chapter 75 claim are not necessarily limited to those that might be had for breach of contract; however, upon a damage verdict favorable to plaintiffs and the trial court's determination that the same course of conduct gave rise to the breach of contract as well as the Chapter 75 claims, plaintiffs must elect their damages remedy.

### 7. Unfair Trade Practices— attorneys' fees—prevailing party—actual damages

The portion of a judgment awarding counsel fees on a claim for unfair and deceptive trade practices was vacated where a new trial was ordered on the issue of damages. Attorneys' fees may be allowed to a prevailing party under N.C.G.S. § 75-16.1 in a Chapter 75 claim, but one must suffer actual damages to be a "prevailing party."

Appeal by plaintiffs and defendants from judgment filed 28 May 1998 and appeal by defendants from order filed 9 June 1998 by Judge James R. Vosburgh in Carteret County Superior Court. Heard in the Court of Appeals 16 September 1999.

*Byrant & Stanley, P.A., by Richard L. Stanley for plaintiffs.*

*James W. Thompson for defendants.*

JOHN, Judge.

At the outset, we observe that the appeals of both plaintiffs and defendants are subject to dismissal, *see Northwood Homeowners*

*Assn. v. Town of Chapel Hill*, 112 N.C. App. 630, 632, 436 S.E.2d 282, 283 (1993), in that the parties' appellate briefs violate the North Carolina Rules of Appellate Procedure (the Rules) by failing to support their respective summary of the facts with sufficient "references to pages in the transcript of proceedings, the record on appeal, or exhibits," N.C.R. App. P. 28(b)(4). Notwithstanding, in view of the errors identified herein, we elect in our discretion to address the instant appeals. *See* N.C.R. App. P. 2 (Court may suspend operation of the Rules "[t]o prevent manifest injustice").

In this dispute concerning contracts for the sale of real property, plaintiffs and defendants appeal the trial court's judgment (the judgment) awarding plaintiffs $15,000.00 in damages for breach of contract and unfair and deceptive trade practices as well as $7,500.00 in counsel fees. We affirm the judgment in part, reverse in part, and vacate the award of counsel fees.

Pertinent facts and procedural history include the following: In 1993, defendants Gary and Beverly Hill (Mr. and Mrs. Hill) purchased approximately 150 lots in Sea Gate Subdivision, located in Carteret County, North Carolina. Operating and doing business under the trade name "Sea Gate Enterprises," defendants later sought to resell the lots for profit.

Plaintiffs Carl and Ruby Poor (Mr. and Mrs. Poor) and Carl and Marie Rose (Mr. and Mrs. Rose) contacted defendants in the fall of 1993 concerning three Sea Gate lots located on the Intracoastal Waterway. On 16 October 1993, defendants entered into three contracts for sale (the contracts) with plaintiffs. Defendants agreed to sell Lot 129 to Mr. and Mrs. Rose for the price of $27,000.00, Lot 130 to Mr. and Mrs. Poor for $36,000.00, and Lot 128 to the four plaintiffs jointly for $27,000.00. Plaintiffs advanced the sums of $810.00, $1,080.00, and $810.00, respectively, as earnest money for each lot.

The contracts, each signed by both Mr. and Mrs. Hill on 16 October 1993, were conditioned upon defendants' procurement of "a septic permit" for each lot, "an unclouded deed from Weyerhaeuser Timber Company" for each lot, and Coastal Area Management Act (CAMA) permits allowing docks on lots 128 and 130. Defendants disputed the claim of Weyerhaeuser, an adjoining property owner, to ownership of nearly two-thirds of the acreage covered by the lots, thereby prompting the quitclaim deed condition. The contracts specified a closing date of 1 May 1994.

**POOR v. HILL**

[138 N.C. App. 19 (2000)]

Between 16 October 1993 and October 1994, Mr. Rose exchanged numerous telephone calls with Mr. Hill. Mr. Rose also contacted defendants' attorney during the same period seeking information regarding closing, but was told defendants had not obtained the requisite quitclaim deeds from Weyerhaeuser. However, by mid-June 1994, septic tank permits for each lot and one CAMA dock permit had been secured.

Mr. Hill and plaintiffs met in early June 1994 to discuss closing, but the transaction did not take place. On 15 September 1994, Mr. Rose wrote Mr. Hill inquiring about closing and referencing an earlier discussion of modifying financing arrangements for the purchase of lot 130. Mr. Rose also requested "copies of the deeds from Weyerhaeuser to you to know for sure that you have these lots in order to close with us."

In his 22 September 1994 written reply, Mr. Hill maintained he had previously assured plaintiffs that Weyerhaeuser was prepared to issue deeds, but that he had not heard from plaintiffs thereafter. Accordingly, Mr. Hill continued,

[a]s far as we are concerned, any contracts we have had with you and the Poor's are in default. I have spoken with my attorney concerning this matter . . . [and] he feels that we had an enforceable contract and that we are quite possibly entitled to damages due to the fact that those three lots had been taken off of the available real estate market . . . .

Those lots have since been re-established on the real estate market and are now for sale with the asking price of $35,000 for lot [128], $40,000.00 for lot [129] and $45,000.00 for lot [130]. If you would still like to purchase them, it will require $2000.00 in earnest money on each lot, up front . . . .

At about the same time, defendants transferred plaintiffs' earnest money from Sea Gate's trust account into an operating account.

In a letter to Mr. Hill dated 17 October 1994, Mr. Rose asserted plaintiffs were "ready, willing, and able to close in May," but were unable to do so because of defendants' failure to secure quitclaim deeds from Weyerhaeuser. Mr. Rose reiterated that plaintiffs remained ready to close on the contracts as written if defendants had indeed obtained the deeds. Quitclaim deeds from Weyerhaeuser on all three lots were recorded 12 December 1994.

In the meantime, however, Mr. Hill had executed sales contracts with Richard and Joyce Cross (Mr. and Mrs. Cross) for lot 128 on 12 September 1994 and with Roy Davis (Davis) for lot 129 on 4 November 1994. Closing on these contracts was held 7 April 1995 and 3 February 1995, respectively, and lot 130 was sold 27 September 1995 to Edward and Jo Ann Chadwick (Mr. and Mrs. Chadwick).

As late as 16 February 1995, plaintiffs, through their lawyer, informed defendants they still wished to close on the contracts. Plaintiffs thereafter filed the instant suit 18 July 1995 alleging (1) breach of contract and (2) unfair or deceptive acts or practices in violation of N.C.G.S. § 75-1—75-35 (1999) (Chapter 75).

Defendants filed answer 18 September 1995 asserting as an affirmative defense that

[a]t all times, the Defendants were ready, willing and able to close on the purchase of the three lots pursuant to the contracts sued upon. The Defendants would have closed at any time the Plaintiffs were prepared to close, but the Plaintiffs never came forward to tender their performance . . . . By virtue of [their] conduct, the Plaintiffs themselves breached their own contract and therefore have no rights in it . . . . In fact, the Plaintiffs had a falling out between themselves over the contract and gave every indication to the Defendants that they had lost interest in the contracts . . . .

At trial, following presentation of all the evidence, defendants renewed an earlier motion for directed verdict as to both claims against Mrs. Hill based upon the "absolute lack of evidence regarding [her] liability for default." Plaintiffs objected, asserting that "nothing in their evidence . . . absolve[d] her from liability." The trial court, after questioning why Mrs. Hill had not been called as a witness, allowed defendants' motion. However, defendants' renewed directed verdict motion addressed to plaintiffs' claims against Mr. Hill was denied.

By its verdict, the jury determined Mr. Hill, but not plaintiffs, had breached and repudiated the contracts, and awarded Mr. and Mrs. Rose $3,000.00 in damages and $2,000.00 to Mr. and Mrs. Poor. The jury also answered special interrogatories submitted by the trial court as follows:

11. Did the defendant, Gary A. Hill, Sr. commit any one or more of the following acts:

a. Did the defendant, knowing that he was not in a position to perform his contract with the plaintiffs, . . . intentionally terminate his contracts with the plaintiffs on September 22, 1994, retain their down payment, and increase the sales price?

ANSWER: Yes

b. At the time of the termination of the contracts, had the defendant, . . . already entered into a contract to sell any one or more of the lots to third parties?

ANSWER: Yes

c. Did the defendant . . . retain plaintiffs' . . . earnest money, not having met the contract terms and resell the three lots to third parties for an increased price?

ANSWER: Yes

d. Was the [defendant's] conduct in commerce or did it affect commerce?

ANSWER: Yes

e. Were the plaintiffs . . . injured as a proximate result of the [defendant's] conduct?

ANSWER: Yes

f. What amount, if any, have the plaintiffs . . . been injured?

ANSWER: $30,000

In the judgment entered 22 May 1998, the trial court set aside the jury's award of damages in issue 11f, and trebled the remaining damage award, *see* G.S. § 75-16, thereby increasing to $9,000.00 the damages of Mr. and Mrs. Rose and to $6,000.00 the damages of Mr. and Mrs. Poor; the court also awarded counsel fees to plaintiffs in the amount of $7,500.00, *see* G.S. § 75-16.1. Defendants subsequently moved to set aside the jury's verdict, for judgment notwithstanding the verdict (JNOV), and for new trial (collectively, defendants' post-trial motions), which motions were denied by the trial court 9 June 1998.

[1] We first note defendants have expressly abandoned two assignments of error relating to the jury instructions given in the instant case. We therefore turn to defendants' arguments concerning denial of their directed verdict and post-trial motions, in particular that for

JNOV, as to Mr. Hill on both the breach of contract and Chapter 75 claims. In challenging the trial court's denial of said motions, defendants maintain the evidence was insufficient to send either claim to the jury. We disagree.

A JNOV motion constitutes renewal of an earlier motion for directed verdict, *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985), and similarly tests the legal sufficiency of the evidence to take the case to the jury. *Taylor v. Walker*, 84 N.C. App. 507, 509, 353 S.E.2d 239, 240, *rev'd on other grounds*, 320 N.C. 729, 360 S.E.2d 796 (1987). Such motion "shall be granted if it appears that the motion for directed verdict could properly have been granted." N.C.G.S. § 1A-1, Rule 50(b)(1) (1999).

Accordingly, the test for determining sufficiency of the evidence is the same under both motions. *Dickinson v. Pake*, 284 N.C. 576, 584, 201 S.E.2d 897, 903 (1974). A court ruling on a JNOV motion must consider the evidence in the light most favorable to the non-movant, with all reasonable inferences drawn in its favor. *Abels v. Renfro Corp.*, 335 N.C. 209, 215, 436 S.E.2d 822, 825 (1993). If there is more than a scintilla of evidence supporting each element of the non-movant's claim, the motion should be denied. *Ace Chemical Corporation v. DSI Transports, Inc.*, 115 N.C. App. 237, 242, 446 S.E.2d 100, 103 (1994).

The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. *Jackson v. California Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). Defendants do not dispute that valid contracts existed between plaintiffs and defendants; rather, defendants argue Mr. Hill's performance under the contracts was excused, such that no breach occurred, because plaintiffs were not "ready, willing, and able to perform their part of the contract."

To the contrary, the evidence taken in the light most favorable to the plaintiffs, *see Abels*, 335 N.C. at 215, 436 S.E.2d at 825, indicates plaintiffs at all times were ready and willing to perform and that defendants, and specifically Mr. Hill, breached the contracts. For example, the 17 October 1994 letter of Mr. Rose to Mr. Hill stated plaintiffs had been "ready, willing, and able to close in May," but were prevented by defendants' failure to procure quitclaim deeds from Weyerhaeuser. As to breach, undisputed evidence in the record reflects that the required quitclaim deeds were not obtained from Weyerhaeuser until seven months after the closing date set in the con-

tracts, *see Sale v. State Highway Commission*, 242 N.C. 612, 619, 89 S.E.2d 290, 296 (1955) (failure to comply with duty imposed by contract terms constitutes breach), that Mr. Hill entered into subsequent sales contracts with third parties regarding the lots subject to the contracts with plaintiffs, and that Mr. Hill terminated the contracts by means of the 22 September 1994 letter.

Plaintiffs having presented more than a scintilla of evidence on each element of their breach of contract claim as to Mr. Hill, the trial court properly denied defendants' directed verdict and post-trial motions, notably that for JNOV, *see Ace Chemical Corporation*, 115 N.C. App. at 242, 446 S.E.2d at 103, on that issue. We next consider the sufficiency of the evidence regarding plaintiffs' Chapter 75 claim against Mr. Hill.

[2] To survive a JNOV motion on a claim of unfair and deceptive trade practices, the non-moving party must have presented more than a scintilla of evidence the movant engaged in

(1) an unfair *or* deceptive act or practice, *or* an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the [non-movant] or to his business.

*Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991) (emphasis added). Defendants concede Mr. Hill was engaged in commerce and present no argument in their appellate brief disputing the presence of proximate cause. *See* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned"). Denial of defendants' JNOV motion was therefore proper if plaintiffs presented more than a scintilla of evidence supporting the first element, *i.e.*, whether Mr. Hill engaged in "an unfair *or* deceptive act or practice, *or* an unfair method of competition." *Spartan Leasing*, 101 N.C. App. at 460, 400 S.E.2d at 482 (emphasis added).

Issue 11 of the verdict sheet, set out in full above, required the jury to answer several special interrogatories directed at the conduct of Mr. Hill. Defendants contend plaintiffs presented no evidence to support interrogatory 11a, and that the conduct described in interrogatories 11a, b, and c, to which the jury responded in the affirmative, "do[es] not rise to the level of an unfair or deceptive trade practice." We are not persuaded by either argument.

As to interrogatory 11a inquiring whether Mr. Hill knew "he was not in a position to perform his contract with the plaintiffs . . . on

September 22, 1994," we note it is undisputed in the record that quit-claim deeds from Weyerhaeuser were not obtained until December 1994. Such evidence alone, viewed in the light most favorable to plaintiffs, *see Abels*, 335 N.C. at 215, 436 S.E.2d at 825, furnished an adequate basis upon which the jury could have based its affirmative answer to the interrogatory.

[3] Regarding defendants' second argument, it is well established that upon a jury's determination that certain specified acts were committed, the trial court must then determine as a matter of law whether the "proven facts constitute an unfair or deceptive trade practice." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988). In the case *sub judice*, the jury's special interrogatory responses determined as fact that:

a. Mr. Hill, "knowing that he was not in a position to perform his contract . . . intentionally terminate[d] his contracts with the plaintiffs on September 22, 1994, retain[ed] their down payment, and increase[d] the sales price";

b. "At the time of the termination of the contracts, . . . [Mr. Hill had] already entered into a contract to sell . . . one or more of the lots to third parties;" and,

c. Mr. Hill "retaine[d the plaintiffs'] earnest money, not having met the contract terms and res[old] the three lots to third parties for an increased price."

Defendants assert the facts established by the jury constituted at most breach of contract, not legally sufficient to constitute a violation of Chapter 75. Defendants are correct that a

[s]imple breach of contract . . . do[es] not qualify as [a violation of Chapter 75], but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies.

*Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Applicable aggravating circumstances include conduct of the breaching party that is deceptive. *See Mosley & Mosley Builders v. Landin Ltd.*, 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (breach accompanied by fraud or deception constitutes unfair or deceptive trade practice), *disc. review denied*, 326 N.C. 801, 393 S.E.2d 898 (1990). A practice is deceptive if it "possesse[s] the tendency or

capacity to mislead, or create[s] the likelihood of deception." *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981).

Mr. Hill's 22 September 1994 letter to plaintiffs had the capacity to mislead and was therefore deceptive for Chapter 75 purposes. *See id.* Even though Mr. Hill indicated therein that plaintiffs might purchase all three lots if they assented to an increased purchase price, the jury's finding established that at least one lot had become subject to an unrelated contract to purchase by the date of the letter. *See Mosley & Mosley*, 97 N.C. App. at 519, 389 S.E.2d at 580 (letter from lessor to lessee expressing wishes for "another profitable year" deceptive when lessor was simultaneously negotiating with another tenant for lessee's retail space).

In addition, although not necessary to support a Chapter 75 claim, *see Johnson v. Insurance Co.*, 300 N.C. 247, 265, 266 S.E.2d 610, 622 (1980) ("[p]roof of actual deception is unnecessary"), evidence was also introduced that plaintiffs were in fact deceived, believing the three lots would continue to be available. In a 16 February 1995 letter from their attorney, plaintiffs indicated a continued willingness to close on the contracts; however, the undisputed evidence was that closing on one lot in an unrelated transaction had previously occurred on 3 February 1995.

Given the deceptive nature of Mr. Hill's 22 September 1994 letter, his imposition of an increased price upon the lots and entry into sales contracts thereon with third parties, as well as the retention of plaintiffs' earnest money deposits, we hold the trial court properly concluded that aggravating circumstances necessary to sustain a Chapter 75 claim against Mr. Hill were present, *see Norman Owen Trucking*, 131 N.C. App. at 177, 506 S.E.2d at 273, and that the court did not err in denying defendants' directed verdict and post-trial motions addressing that claim.

[4] We turn now to plaintiffs' assignments of error and consider *ad seriatim* their challenge to the trial court's grant of defendants' directed verdict motion on plaintiffs' claims of breach of contract and unfair and deceptive trade practices against Mrs. Hill.

To reiterate, the elements of a claim of breach of contract are (1) existence of a valid contract and (2) breach of that contract, specifically by Mrs. Hill in the present context. *Jackson*, 120 N.C. App. at 871, 463 S.E.2d at 572. At trial, defendants indicated they did not

"deny that [Mrs. Hill] signed the contract[s] and in fact we don't deny that she was bound by the contract[s]." Accordingly, to have survived defendants' directed verdict motion, plaintiffs simply must have produced more than a scintilla of evidence that Mrs. Hill breached the contracts. *See Ace Chemical Corporation*, 115 N.C. App. at 242, 446 S.E.2d at 103.

Although Mrs. Hill was not called as a witness, Mr. Hill testified he and Mrs. Hill did business and sold lots in Sea Gate under the name Sea Gate Enterprises and that the Sea Gate Enterprises operating account, into which plaintiffs' earnest money payments had been deposited following withdrawal from defendants' trust account, was maintained in the name of both Mr. and Mrs. Hill. Additionally, under the terms of the contracts, both Mr. and Mrs. Hill were required to obtain quitclaim deeds from Weyerhaeuser, and Weyerhaeuser indeed conveyed its interest in the three lots to both Mr. and Mrs. Hill, although not until 12 December 1994, seven months after the closing date specified in the contracts.

Taken in the light most favorable to plaintiffs, *see Abels*, 335 N.C. at 215, 436 S.E.2d at 825, the foregoing provided more than a scintilla of evidence that Mrs. Hill failed to perform a term of the contracts, *see Ace Chemical Corporation*, 115 N.C. App. at 242, 446 S.E.2d at 103, even absent consideration of the agency implications raised by the evidence and discussed below. The trial court's directed verdict in favor of Mrs. Hill on plaintiffs' breach of contract claim therefore must be reversed.

[5] With reference to plaintiffs' claim of unfair and deceptive trade practices against Mrs. Hill, defendants emphasize that the evidence presented at trial focused upon the actions of Mr. Hill, notably the 22 September 1994 letter in which he claimed plaintiffs were in default on the contracts and purported to raise the price of the lots. Mrs. Hill was neither a signatory to that letter, nor to the later contracts for sale entered into for lots 128 and 129 in September and November 1994. Further, while defendants vigorously reasserted at trial that there was no evidence Mrs. Hill breached the contracts, they argued in the alternative that her conduct in any event comprised no more than breach of contract, which without more does not violate Chapter 75. *See Norman Owen Trucking*, 131 N.C. App. at 177, 506 S.E.2d at 273.

However, although plaintiffs do not stress the point, the record is replete with evidence tending to show Mr. Hill acted as the agent of

Mrs. Hill throughout his dealings with plaintiffs, thereby implicating her in any violation of Chapter 75. *See Lee v. Keck*, 68 N.C. App. 320, 324-25, 315 S.E.2d 323, 327 (wife who committed no acts of misrepresentation or fraud in real estate transaction held liable on plaintiffs' claims for unfair trade practices and fraud for acts of husband determined to be her agent), *disc. review denied*, 311 N.C. 401, 319 S.E.2d 271 (1984). Although "[n]o presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife," *Norburn v. Mackie*, 262 N.C. 16, 22, 136 S.E.2d 279, 284 (1964), only " 'slight evidence' " of agency suffices to charge a spouse as a principal if that spouse "receives, retains, and enjoys the benefit of [a] contract" entered into by the other spouse, *id.* at 23, 136 S.E.2d at 284 (citing 41 C.J.S. *Husband and Wife* § 70 (now renumbered as 41 C.J.S. *Husband and Wife* § 58 (1991))).

In the case *sub judice*, for example, the record reflects that Mrs. Hill retained the benefits of the contracts in that plaintiffs' earnest money was deposited into a joint trust account of Mr. and Mrs. Hill and was subsequently transferred to a joint bank account following Mr. Hill's declaration that plaintiffs were in default. In the 22 September 1994 letter, moreover, Mr. Hill stated both he and Mrs. Hill owned the lots, and several times employed the inclusive phrase "we": "we were still ready to close," "we would sell all 3 lots," and "[a]s far as we are concerned," plaintiffs had defaulted on the contracts. The letter was signed by Mr. Hill as President of Sea Gate Enterprises, which, according to his testimony, was the name he and his wife utilized in conducting the business of selling lots in Sea Gate subdivision.

In addition, the evidence tended to show Mrs. Hill retained the benefits of the contracts conveying the lots to Mr. and Mrs. Cross and Mr. and Mrs. Chadwick in that both Mr. and Mrs. Hill were denominated as "seller" on the settlement statements, and Mrs. Hill executed both the settlement statement for the Cross lot and the deed for the Chadwick lot. Finally, Mrs. Hill was specifically named on the quit-claim deeds from Weyerhaeuser.

The foregoing evidence, taken together in the light most favorable to plaintiffs, *see Abels*, 335 N.C. at 215, 436 S.E.2d at 825, tended to show Mr. Hill was at all times acting as agent for Mrs. Hill during the course of his dealings with plaintiffs regarding the lots at issue. Where evidence of an agency relationship has been presented, agency becomes a fact to be proved and a question for the jury, *Industries*,

*Inc. v. Distributing, Inc.*, 49 N.C. App. 172, 173, 270 S.E.2d 515, 516 (1980), and a directed verdict would be proper only if "there [wa]s no evidence presented tending to establish an agency relationship," *Smith v. VonCannon*, 17 N.C. App. 438, 439, 194 S.E.2d 362, 363, *aff'd*, 283 N.C. 656, 197 S.E.2d 524 (1973).

In short, because the evidence tended to show Mr. Hill was acting as Mrs. Hill's agent, *see Industries, Inc.*, 49 N.C. App. at 173, 270 S.E.2d at 516, the trial court's directed verdict in favor of Mrs. Hill on plaintiffs' Chapter 75 claim may be sustained only if such motion were appropriate as to Mr. Hill. In that we have determined defendants' renewed directed verdict motion regarding Mr. Hill on plaintiffs' Chapter 75 claim was properly *denied* by the trial court, it was error for the court to allow defendants' directed verdict motion on this issue as to Mrs. Hill, *see Lee*, 68 N.C. App. at 324-25, 315 S.E.2d at 327 (even though wife committed no acts of misrepresentation, court correctly denied her summary judgment motion on unfair trade practices claim where evidence was presented of husband acting as her agent).

At retrial, the jury must determine only whether Mr. Hill indeed acted as the agent of Mrs. Hill in regard to the conduct described in the instant jury's affirmative answers to the special interrogatories. If so, in light of our opinion herein, it would be unnecessary for the trial court to consider anew whether such conduct of Mr. Hill was violative of Chapter 75.

[6] Plaintiffs next assign error to the action of the trial court in setting aside the jury's damage award on plaintiffs' Chapter 75 claim as to Mr. Hill. Prior to discussing this issue, we interject that, no error having been assigned to the jury's verdict assessing damages on plaintiffs' breach of contract claim, resolution at trial in plaintiffs' favor of such claim against Mrs. Hill, either under a theory of actual breach or of agency, would result in the latter's joint liability for the previously determined amount of damages. *See, e.g., McLain v. Taco Bell Corp.*, 137 N.C. App. 179, ——, 527 S.E.2d 712, —— (2000) (damages having been previously determined as to one of two jointly liable parties, retrial limited to issue of liability), and *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357 ("although plaintiff is entitled to full recovery for its damages, plaintiff is nevertheless not entitled to 'double recovery' for the same loss or injury") (citation omitted), *disc. review denied*, 346 N.C. 281, 487 S.E.2d 551 (1997).

The jury awarded plaintiffs $30,000.00 in damages for injuries resulting from Mr. Hill's violation of Chapter 75, as outlined in issue 11. In the judgment, the trial court stated that

> issue 11f should not have been submitted to the jury without first instructing them that if they answered issues 9 and 10 [awarding damages for breach of contract] that issue 11f would have to be answered in the same amount. Issue 11f as answered by the jury is against the greater weight of the evidence and is not in keeping with the instructions of the court with regard to the issue of damages and, therefore, issue 11f and the answer thereto is hereby set aside.

However, the proper remedy in the instance of a verdict against the greater weight of the evidence or contrary to the trial court's instructions is a new trial on the issue of damages. *See* N.C.G.S. § 1A-1, Rule 59(a)(5),(7) (1999); *Insurance Co. v. Chantos*, 298 N.C. 246, 251, 258 S.E.2d 334, 338 (1979) (term "insufficiency of the evidence" in Rule 59(a)(7) includes the reason that the verdict "was against the greater weight of the evidence"). Notwithstanding, the trial court herein instead apparently replaced the jury's Chapter 75 damages in the amount of $30,000.00 with the sum imposed by the jury for breach of contract, *i.e.*, $5,000.00, and then trebled the latter amount, ostensibly pursuant to G.S. § 75-16, thereby awarding plaintiffs a total of $15,000.00.

> "It is a cardinal rule that the judgment must follow the verdict, and if the jury have given a specified sum as damages, the court cannot increase or diminish the amount, except to add interest, where [it] is allowed by law and has not been included in the findings of the jury." 2 McIntosh, North Carolina Practice and Procedure § 1691 (2d ed. 1956); *Durham v. Davis*, 171 N.C. 305, 88 S.E. 433 [(1916)]. In this case, the judge should have set aside the verdict in his discretion if he deemed it against the weight of the evidence or considered the damages excessive. Instead of doing so, he attempted to change the verdict as to the defendants . . ., and this he could not do.

*Bethea v. Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam). Accordingly, a new trial must be had on the issue of damages, *see* G.S. § 1A-1, Rule 59(a), resulting from plaintiffs' Chapter 75 claim against Mr. Hill.

As to the trial court's apparent theory that Chapter 75 damages on a claim arising out of a breach of contract must be limited to the dam-

ages awarded by the jury on the related breach of contract claim, we point out that G.S. § 75-16 provides:

> If any person shall be injured . . . by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of [Chapter 75], such person . . . so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

This Court has previously observed that

> [t]he statute merely refers to the person being "injured" and does not state the method of measuring damages. Consequently, there is confusion as to the proper measure of damages in an unfair or deceptive act or practice case.

*Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 231, 314 S.E.2d 582, 585, *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984).

Damages on a Chapter 75 claim are not necessarily limited to those that might be had for breach of contract.

> [A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty. Since the remedy was created partly because those remedies often were ineffective, it would be illogical to hold that only those methods of measuring damages could be used.

*Id.* at 232, 314 S.E.2d at 585.

On retrial, therefore, plaintiffs must prove they "suffered actual injury as a proximate result of defendants' " misconduct. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980). Such injury may

> include the (1) [earnest money deposits]; (2) loss of the use of specific and unique property; and (3) loss of the appreciated value of the property,

*Edwards v. West*, 128 N.C. App. 570, 575, 495 S.E.2d 920, 924, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998) (citation omitted), and such other elements of damages as may be shown by the evidence. In short,

POOR v. HILL

[138 N.C. App. 19 (2000)]

[t]he measure of damages used should further the purpose of awarding damages, which is "to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money."

*Bernard*, 68 N.C. App. at 233, 314 S.E.2d at 585 (quoting *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950)).

While considering the topic of Chapter 75 damages, we note that upon submission to the jury and an answer favorable to plaintiffs on the latter's Chapter 75 claim against Mrs. Hill under an agency theory, Mr. and Mrs. Hill would thereupon be jointly liable for the resultant amount of damages determined by the jury. *See McLain*, 137 N.C. App. at ——, 527 S.E.2d at ——; *Markham*, 125 N.C. App. at 455, 481 S.E.2d at 357.

Finally, in the damages context, we note that should the "same course of conduct give[] rise" to plaintiffs' breach of contract and Chapter 75 claims, plaintiffs may recover damages "either for the breach of contract, or for violation of [Chapter 75], but not for both." *Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981). Upon a damage verdict favorable to plaintiffs at retrial on their Chapter 75 claim and the trial court's determination that the "same course of conduct" gave rise to plaintiffs' breach of contract as well as then Chapter 75 claims, *see id.*, plaintiffs must elect their damages remedy, *see Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 427, 344 S.E.2d 297, 301, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 464 (1986) (requiring election of remedy prior to jury resolution of all issues would be "manifestly unfair").

[7] In their remaining assignment of error, defendants' contend the trial court's grant of counsel fees to plaintiffs was erroneous. We decline to address defendants' arguments in regards thereto, however, as the trial court's award must be vacated.

In any suit instituted by a person who alleges that the defendant violated G.S. [§] 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the *prevailing party*, . . . upon a finding by the presiding judge that:

(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such

party to fully resolve the matter which constitutes the basis of such suit . . . .

G.S. § 75-16.1 (emphasis added). Plaintiffs,

in order to be the "prevailing party" within the meaning of G.S. [§] 75-16.1, must prove not only a violation of G.S. [§] 75-1.1 by the defendant[s], but also that plaintiff[s] ha[ve] suffered actual injury as a result of that violation.

*Mayton v. Hiatt's Used Cars,* 45 N.C. App. 206, 212, 262 S.E.2d 860, 864, *disc. review denied,* 300 N.C. 198, 269 S.E.2d 624 (1980).

In the instant case, although plaintiffs have established Mr. Hill's violation of G.S. § 75-1.1, a new trial as to the resultant damages has been ordered herein. Absent an award of damages, plaintiffs have not yet established the amount of actual injury. *See Mayton,* 45 N.C. App. at 212, 262 S.E.2d at 864 (jury award of zero damages for Chapter 75 violation "was in essence a determination that plaintiff suffered no injury"). Consideration of an award of counsel fees based upon G.S. § 75-16.1 would therefore be premature at this stage, because plaintiffs' damages, if any, occasioned by defendants' violation of Chapter 75 will be determined on remand. Accordingly, that portion of the judgment awarding counsel fees to plaintiffs is vacated.

To summarize, the trial court's denial of defendants' directed verdict and post-trial motions as to Mr. Hill is affirmed; the court's grant of defendants' directed verdict motions as to Mrs. Hill is reversed; the trial court's award of counsel fees is vacated; and this case is remanded (1) for trial on all issues (as to Mrs. Hill) save damages for breach of contract and (2) for trial on the issue of damages as to Mr. Hill's (and potentially Mrs. Hill's) violation of Chapter 75.

Affirmed in part, reversed in part, vacated in part, and remanded.

Judges WYNN and EDMUNDS concur.