Maurer v. SlickEdit, Inc., 2005 NCBC 4

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 04 CVS 10527 |

JILL L. MAURER,

        Plaintiff,

                                    ORDER AND OPINION

        v.

SLICKEDIT, INC., ANDRE BOISVERT,
ERICA H. BOISVERT, J. CLARK MAURER,
and HOWARD H. LEWIS,

        Defendants.

{1}     This matter comes before the Court on cross motions by plaintiff and defendants for summary judgment. Plaintiff moves for summary judgment on claims against SlickEdit, Inc. ("SlickEdit") and SlickEdit's current officers and members of the Board of Directors on her claim for breach of contract and for violations of the Wage and Hour Act. Defendants move for summary judgment on plaintiff's claims for fraud, breach of contract, rescission and reformation, violations of the Wage and Hour Act and slander.

{2}     After considering the briefs and oral arguments of each party and for the reasons below, the Court grants the motions for summary judgment in part and denies them in part. Plaintiff is entitled to summary judgment on the breach of contract claim, thus rendering the claim for rescission and/or reformation moot. Defendants are entitled to summary judgment on the slander claims. The claims under the Wage and Hour Act are for the Court's determination. The Boisverts' motion for summary judgment on the fraud claim is denied.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Mark A. Ash and J. Mitchell Armbruster for Plaintiff Jill L. Maurer.*

*Womble Carlyle Sandridge & Rice, PLLC, by Pressly M. Millen for Defendants SlickEdit, Inc., Andre Boisvert, Erica H. Boisvert, J. Clark Maurer, and Howard H. Lewis.*

I.

FACTUAL BACKGROUND

{3}     Plaintiff Jill L. Maurer is a resident of Wake County, North Carolina. Plaintiff is currently a 42.5% shareholder in SlickEdit. Plaintiff served as Chief Executive Officer of SlickEdit until her termination in April 2004. She is divorced from defendant Clark Maurer. Mr. and Ms. Maurer started and built the company together.

{4}     Defendant SlickEdit is a corporation organized under the laws of Virginia with its principal place of business in Morrisville, Wake County, North Carolina.

{5}     Defendant J. Clark Maurer is a resident of Wake County, North Carolina.  Mr. Maurer is a 42.5% shareholder of SlickEdit, a member of the Board of Directors of SlickEdit, and the Chief Technology Officer of SlickEdit.  He designed the software which is the main product of the company.

{6}     Defendant Andre Boisvert is a resident of Wake County, North Carolina.  Mr. Boisvert is Chairman of the Board of Directors of SlickEdit.  Mr. Boisvert is an 11% shareholder in SlickEdit.  He is a consultant or officer in several other businesses driven by the creation, production, or marketing of computer software.

{7}     Defendant Erica H. Boisvert is a resident of Wake County, North Carolina.  Ms. Boisvert is a member of the Board of Directors of SlickEdit.  Ms. Boisvert serves as President and Chief Operating Officer of SlickEdit.  Ms. Boisvert is a 2.5% shareholder in SlickEdit.  She is married to Andre Boisvert.

{8}     Howard H. Lewis is a resident of Wake County, North Carolina.  Mr. Lewis is a 1% shareholder in SlickEdit and a member of the Board of Directors of SlickEdit.  The claims against Mr. Lewis have been dismissed.

{9}     The following facts are undisputed.

{10}    In December of 1987, Jill and Clark Maurer married.  In early 1988, SlickEdit (formerly known as MicroEdge) was incorporated in Virginia.  In 1988, the company first released the product SlickEdit, an editor for programmers intended to work on multiple computer platforms.  On August 5, 1992, Mr. Maurer licensed the rights to the software he developed to SlickEdit, subject to payment of an 8% royalty on all revenues the company derived from use of the software.

{11}    In 2000, Mr. Boisvert joined the SlickEdit Board of Directors.  Later in 2000, SlickEdit hired Mr. Boisvert's wife, Erica Boisvert, to serve as the Chief Financial Officer of SlickEdit.  In 2001, Mr. Boisvert became the Chairman of the Board of Directors of SlickEdit.

{12}    In or about late 2001 or early 2002, documents were executed to officially document the ownership of the company.  Both plaintiff and Mr. Maurer owned approximately 42.5% of the company.  Mr. Boisvert owned approximately 11% of the company and Ms. Boisvert owned approximately 2.5% of the company.[1]  Mr. Boisvert obtained at least 10% of his 11% ownership through newly issued shares in exchange for a promissory note.  The Board of Directors subsequently voted to forgive a portion of Mr. Boisvert's loan.  In addition, Ms. Boisvert obtained 2.5% ownership through newly issued shares in exchange for a promissory note.

{13}    On December 31, 2001, at the advice of Mr. Boisvert, Mr. Maurer signed a termination agreement terminating the agreement executed on August 5, 1992 that provided an 8% royalty payment to Mr. Maurer on all revenues derived from use of the SlickEdit software.  Ownership of the rights to the software was transferred to SlickEdit.  The next day, January 1, 2002, both plaintiff and Mr. Maurer signed employment agreements with SlickEdit which included a provision for each to receive an annual bonus of 4% of the company's licensing revenue.  On the same day, plaintiff and Mr. Maurer legally separated.

{14}    On February 14, 2003 the Maurers were legally divorced.

{15}    In early April 2004, plaintiff requested an estimate of SlickEdit's first quarter financials for tax planning purposes.  On April 15, 2004, a tax-free distribution was made to both plaintiff and Mr. Maurer to meet tax obligations including the taxes derived from ownership of SlickEdit, which is an S corporation.

{16}    On April 20, 2004, the SlickEdit board members, excluding plaintiff, voted in favor of plaintiff's

termination. Following her termination, SlickEdit ceased making bonus payments to plaintiff.

{17} On July 19, 2005, Defendants SlickEdit, Mr. Boisvert and Ms. Boisvert filed their motion for summary judgment on plaintiff's claims for fraud, rescission and/or reformation, breach of contract and violations of the Wage and Hour Act. On July 19, 2005, Defendants Mr. Maurer, Mr. Boisvert and Ms. Boisvert filed their motion for summary judgment on plaintiff's claim for slander. On July 22, 2005, plaintiff filed a motion for partial summary judgment on her claims for breach of contract and for violations of the Wage and Hour Act. Plaintiff filed her response to defendants' motions for summary judgment on August 2, 2005. Defendants filed their response to plaintiff's motion for partial summary judgment on August 10, 2005. Defendants SlickEdit, Mr. Boisvert and Ms. Boisvert filed a reply to their motion for summary judgment on August 10, 2005. Defendants Mr. Maurer, Mr. Boisvert and Ms. Boisvert filed a reply to their motion for summary judgment on August 10, 2005. Plaintiff filed a reply to her motion for partial summary judgment on August 11, 2005. The trial is scheduled to commence on August 22, 2005.

## II.
## LEGAL STANDARD

{18} Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). A genuine issue is one which can be maintained by *substantial* evidence; a material fact is that which would constitute a legal defense preventing the non-moving party from prevailing. *Surrette v. Duke Power Co.* , 78 N.C. App. 647, 650, 338 S.E.2d 129, 130 (1986).

{19} The North Carolina Court of Appeals has explained that a summary judgment movant may meet its burden of showing that it is entitled to judgment as a matter of law by showing either (1) an essential element of the non-movant's claim is nonexistent, (2) the non-movant cannot produce evidence to support an essential element of his claim, or (3) the non-movant cannot surmount an affirmative defense which would bar his claim. *Taylor v. Ashburn*, 112 N.C. App. 604, 606-07, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Where the movant is also the party bringing the action, he must establish his claim without any genuine doubt with respect to any material fact. *Lambe-Young, Inc. v. Austin*, 75 N.C. App. 569,571, 331 S.E.2d 293, 295 (1985). Once movants have met their burden by proving that an essential element of the opposing party's claim is non-existent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of its claim, the burden shifts to the non-moving party to show that a genuine issue exists by forecasting sufficient evidence of all essential elements of the claim. *Farrelly v. Hamilton Square*, 119 N.C. App 541, 544, 459 S.E.2d 23, 26 (1995) (citations omitted). "The court must look at the evidence in a light most favorable to

the non-moving party and with the benefit of all reasonable inferences." *Id.* at 544, 459 S.E.2d at 26 (citation omitted).

III.

ANALYSIS

A.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*1.     Breach of Contract and Violations of the Wage and Hour Act*

{20}     Plaintiff moves for summary judgment as to SlickEdit's liability on her claims for breach of contract and for violations of the Wage and Hour Act.   The elements of breach of contract are the existence of a valid contract and breach of the terms of the contract.  *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  A breach of contract is only actionable if a material breach occurs—one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform.  *Fletcher v. Fletcher*, 123 N.C. App. 744, 752, 474 S.E.2d 802, 807-08 (1996), *disc. rev. denied,* 345 N.C. 640, 483 S.E.2d 706 (1997).

{21}     Plaintiff entered into a written Employment Agreement with SlickEdit effective on January 1, 2002.  Section 3.2 of the Employment Agreement provided that plaintiff would receive a monthly bonus:

> 3.2 <u>Bonus</u>.  During each calendar month of this Agreement, Executive [i.e., plaintiff] shall receive 4% of the Net Receipts (as defined below) from all license revenue.  For these purposes, "Net Receipts" shall be defined as gross revenues actually collected from all license   revenue, <u>less</u> shipping and handling charges, customary trade discounts and allowances (if any), returns and uncollectible accounts.  Bonus will be paid within thirty (30) days following each month end.

Section 16 of the Employment Agreement provides that the bonus payments survive termination.

> 16. <u>Survival</u>.  Sections 5, 7, 8, and 9 of this Agreement, relating to post-termination compensation (including, without limitation, the Severance Payment and related rights), confidentiality, and noncompetition, shall survive the expiration or termination of this Agreement.  Section 3.2 shall indefinitely survive post-termination of the Executive's employment with the Company with the only exception being if the Executive's termination was for "Cause" as defined in Section 5.1.

{22}     On April 20, 2004, the SlickEdit Board of Directors voted to terminate plaintiff's employment. The termination was "without Cause" as defined in the Employment Agreement.  SlickEdit has not made any bonus payments as provided for in the Employment Agreement since May 2004.

{23}     No genuine issue of material fact remains as to the existence of a valid contract, the Employment Agreement, and a breach of its terms.  This Court finds as a matter of law that the contract is valid and unambiguous.  See the Order dated August 8, 2005.  Every witness who has been asked to look at the language of section 16 has reached the same conclusion as the Court.[2]  Section 16 states that the Bonus provision of section 3.2 survives indefinitely unless Jill Maurer is terminated for cause.  Defendants offer no other plausible meaning for the language.

{24}     Additionally, there can be no doubt as to the genesis of the provision and the reason for its inclusion. The Maurers transferred the intellectual property rights of the software to SlickEdit.  In doing so they gave up a contractual right to an 8% royalty that had no cutoff date.  They divided the 8% equally, as they were divorcing and the intellectual property was marital property.  Each of them entered into a

contract that gave them a 4% bonus equivalent to the stream of income that the Maurers had received from the license agreement while married. The contractual arrangement applied equally to both Mr. and Ms. Maurer, and the transfer of the intellectual property rights was made at the suggestion of Mr. Boisvert. The dispute in the record as to who drafted the contracts is irrelevant and immaterial. At the meeting at which her employment was terminated, the Board promised Ms. Maurer it would honor her contract. (*See* Bd. Meeting Mins. Apr. 20, 2004.) The only logical reason to do so was to assure her that she would get her bonus payment. It is undisputed that since May 2004, SlickEdit has not made any bonus payments as provided for in the Employment Agreement thereby breaching the terms of the Employment Agreement.

{25} The amount of unpaid bonus payments as of June 30, 2005 was $240,212. (*See* Whitt Aff. ¶ 7.) Defendants did not contest this amount. Plaintiff is also entitled to prejudgment interest at the legal rate of interest of 8%, calculated from the due date for each bonus payment. *See* N.C. Gen. Stat. § 24-1 (2003).

{26} The North Carolina Wage and Hour Act defines wages to include "severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or practice of making such payments." N.C. Gen. Stat. § 95-25.2(16) (2003). Pursuant to section § 95-25.6, the employer must make the payments on the regular payday. Further, pursuant to section § 95-25.22, an employer who fails to pay "wages" is liable to an employee for the amount of those wages. In addition, an employer must pay liquidated damages in an amount equal to the amount of unpaid wages. However, if "the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion" reduce or refuse to award liquidated damages. N.C. Gen. Stat. § 95-25.22(a1) (2003). The Court will hold a separate hearing on the issue of liquidated damages pursuant to the Wage and Hour Act after the trial.

{27} Therefore, plaintiff's motion for summary judgment on her claims for breach of contract is granted. Plaintiff is entitled to the amount of $240,212 and prejudgment interest at the rate of 8%, calculated from the due date for each bonus payment. Any remaining issues of damages for breach of contract are severed and will be tried at a later date if necessary.

*2.    Rescission and Reformation*

{28} Not included in plaintiff's motion for summary judgment, plaintiff's claim for rescission and/or reformation of the Employment Agreement is moot pursuant to the Court's ruling above in Part III.A.1.

B.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*1.    Fraud*

{29} There remain genuine issues of material fact which are hotly disputed with respect to plaintiff's fraud claim against the Boisverts. Summary judgment is denied.

*2.    Breach of Contract, Rescission and/or Reformation, Violations of the Wage and Hour Act*

{30} Defendants' motion for summary judgment with respect to plaintiff's claims for breach of contract and rescission and/or reformation is denied pursuant to the Courts ruling above in Part III.A.1. Plaintiff's claim for violations of the Wage and Hour Act will be decided at a later date.

*3.    Slander*

{31} The essence of the slander claims involves the division of marital property between the Maurers. Their separation agreement specifically provided in Paragraph 8(J) that Ms. Maurer would retain the jewelry she possessed. It made no mention of the value of the jewelry. After the divorce (the precise time

is disputed), Mr. and Ms. Boisvert made statements to Mr. Maurer to the effect that Ms. Maurer had purchased jewelry which Mr. Maurer was unaware of prior to the divorce and that subsequent to the divorce she was selling that jewelry for cash. They used the term "laundering" in their conversations with Mr. Maurer. The use of that term was unfortunate. Money laundering is a crime. Buying jewelry and later selling it for cash is not a crime. If Mr. Maurer failed to ascertain the value of the jewelry he was giving up in the settlement, he was out-negotiated. The clear inference of the Boisverts' statements was that Ms. Maurer had gotten the better of Mr. Maurer in the settlement negotiations. There is no evidence in this record that the phrase "laundering" was used or understood to mean that Ms. Maurer had engaged in illegal money laundering as prohibited by federal statute. That becomes clear when the basis of Ms. Maurer's slander claim against Mr. Maurer is examined.

{32}   The only evidence of record of the alleged slander is the affidavit of Ms. Redpath. The Redpaths were mutual friends of both the Maurers. Ms. Redpath said that Mr. Maurer told her that Jill Maurer "had taken advantage of him by building a stash of jewelry on shopping trips with Erica Boisvert." (S. Redpath Aff. ¶ 2.) That statement does not constitute slander per se, nor, in the Court's view, does it constitute slander per quod. Even if it did constitute slander per quod, the record is devoid of any evidence of special damages arising from the statement, and the slander claim against Mr. Maurer must be dismissed for that reason. *Johnson v. Bollinger,* 86 N.C. App. 1, 9-10, 356 S.E.2d 378, 383-84 (1987).

{33}   Ms. Redpath's affidavit makes one other statement the Court must address. She states Mr. Maurer made statements that "***in substance***, … he believed that Jill Maurer had stolen from SlickEdit, Inc." (S. Redpath Aff. ¶ 2) (emphasis added). Despite an opportunity to amend the complaint to specify the slanderous statements made and despite the opportunity to apprise the Court and defendants of the precise language used, plaintiff is only able to provide an affidavit which contains one person's inference gleaned from unspecified statements by Defendant Mr. Maurer. There is no statement directly attributable to him which would support a finding of slander per se. Such claims must be pled and proved with specificity. *See* N.C. Gen. Stat. § 1A-1, Rule 9(f) (2003); *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 83, 266 S.E.2d 861, 866 (1980). To the extent plaintiff could survive summary judgment on a slander per quod on the basis of the nature Ms. Redpath's affidavit, there is no evidence of record of special damages. Certainly, if any such damages existed, Ms. Redpath's affidavit would have addressed them. As no special damages have been shown, the slander per quod claim based on Ms. Redpath's affidavit must be dismissed. *Johnson,* 86 N.C. App. at 9-10, 356 S.E.2d at 383-84.

{34}   For the foregoing reasons, summary judgment is entered in favor of defendants on plaintiff's slander claims, and those claims are dismissed.

## CONCLUSION

{35}   Based upon the foregoing, it is hereby ORDERED, ADJUDGED and DECREED:

1.   Summary judgment against SlickEdit in favor of plaintiff is GRANTED on the claim for breach of contract.

2.   Summary judgment in favor of plaintiff is held in abeyance on the claim for violations of the Wage and Hour Act.

3.   Summary judgment in favor of Defendants Mr. Boisvert and Mrs. Boisvert is DENIED on the claim for fraud.

4.   Summary judgment in favor of Defendant SlickEdit is DENIED on the claim for breach of contract.

5.      Summary judgment in favor of defendants is DENIED on the claim for rescission and/or reformation.

6.      Summary judgment in favor of Defendants SlickEdit, Mr. Boisvert and Mrs. Boisvert is held in abeyance on the claim for violations of the Wage and Hour Act.

7.      Summary judgment in favor of Defendants Mr. Maurer, Mr. Boisvert and Mrs. Boisvert is GRANTED on the claim for slander.

{36}   This case will be tried beginning August 22, 2005 on plaintiff's fraud claims against the Boisverts.

IT IS SO ORDERED, this the 12th day of August 2005.

---

[1] It is unclear to the Court from the record the exact percentages of ownership.
[2] *See* Larry Robbins Dep. at 42, 45; Howard H. Lewis Dep. at 132, 133; Glover H. Lawrence Dep. at 76.