Wolfspeed, Inc. v. Van Brunt, 2025 NCBC 19.

STATE OF NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV008707-310

WOLFSPEED, INC. f/k/a CREE, INC.,

Plaintiff,

v.

EDWARD VAN BRUNT; SCOTT ALLEN; and ON SEMI CONDUCTOR CORPORATION,

Defendants.

**ORDER AND OPINION ON DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Public]**[1]

1. **THIS MATTER** is before the Court on the 4 December 2024 filing of *Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint* (the Motion). (ECF No. 16 [Mot.].) Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)), Defendants Edward Van Brunt (Van Brunt), Scott Allen (Allen; and with Van Brunt, the Individual Defendants), and On Semi Conductor Corporation (Onsemi; and with the Individual Defendants, Defendants), bring this Motion seeking to dismiss all claims asserted against them by Plaintiff Wolfspeed, Inc. (Plaintiff or Wolfspeed) in the Amended Complaint, (ECF No. 25 [Am. Compl.]). (Mot. 1.)

---

[1] Recognizing that this Order and Opinion cites to and discusses the subject matter of documents that the Court has temporarily allowed to remain under seal in this action, the Court initially filed this Order and Opinion under seal on 20 March 2025, (*see* ECF No. 36) and requested that the parties advise the Court whether any portions of the Order and Opinion deserved to remain under seal. On 2 April 2025, the parties notified the Court that all parties conferred and agreed that there is no material in this Order and Opinion that requires sealing. Accordingly, the Court now files this public version of the Order and Opinion and will promptly unseal the previously filed version, (ECF No. 36) and requests that the Durham County Clerk of Court unseal the document previously filed under seal on Odyssey, (24CV008707-310, at Event No. 32).

2.     For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

> *Katten Muchin Rosenman LLP by Michaela Holcombe and Rebecca Lindahl for Plaintiff.*
>
> *Law Offices of Denise Smith Cline by Denise Smith Cline for Defendant Edward Van Brunt.*
>
> *Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. by Theresa M. Sprain and Grant Michael Wills for Defendants Scott Allen and On Semi Conductor Corporation.*

Robinson, Chief Judge.

## I.     INTRODUCTION

3.     This action arises out of Defendants Van Brunt's and Allen's employment at Wolfspeed. Wolfspeed initiated this action contending that Van Brunt and Allen left Wolfspeed for a competitor, Onsemi, in violation of their respective employment agreements and the restrictive covenants found therein, taking with them to Onsemi trade secret information. Wolfspeed also contends Onsemi wrongfully interfered with Van Brunt's and Allen's respective employment agreements by inducing them to breach the restrictive covenants found therein.

## II.     FACTUAL BACKGROUND

4.     The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6), but instead recites only those factual allegations included in the Amended Complaint that are relevant to the Court's determination of the Motion.

A.    **The Parties**

5.    Plaintiff is a North Carolina corporation with its principal place of business in Durham County, North Carolina. (Am. Compl. ¶ 1.) Plaintiff is in the "field of silicon carbide semiconductor materials and silicon carbide semiconductor devices." (Am. Compl. ¶ 2.)

6.    Van Brunt and Allen are residents of Wake County, North Carolina. (Am. Compl. ¶¶ 3, 8.) Van Brunt was employed by Plaintiff from June 2013 through September 2023, and Allen was employed by Plaintiff from 1994 through 14 October 2022, with both holding "various research and development positions." (Am. Compl. ¶¶ 4, 9.)

7.    Onsemi is a Delaware corporation with a reserved name with the North Carolina Secretary of State, including a location at 3000 RDU Center Drive, Morrisville, North Carolina 27560. (Am. Compl. ¶ 5.) Onsemi is a "semiconductor manufacturer that researches and develops thermoelectric materials, devices and systems[,]" as well as a "supplier company with a focus on automotive and industrial end-markets[.]" (Am. Compl. ¶ 6.) Onsemi also "manufactures and sells silicon carbide devices, such as MOSFETs, as components for its customers to incorporate into finished products." (Am. Compl. ¶ 6.)

B.    **Allen's Employment with Plaintiff**

8.    Allen was employed by Plaintiff for over twenty (20) years, holding a variety of positions, including "Device Scientist, Manager of Power Device Research and

Development, Manager of RF Engineering, and Vice President of Power Technology Development." (Am. Compl. ¶ 24.)

### 1. Allen's Non-Competition and Confidentiality Agreement

9. On 14 June 1994, Allen executed an Employee Agreement, where he agreed to certain confidentiality obligations. (Am. Compl. ¶ 27; *see* Am. Compl. Ex. 1, ECF No. 10.)[2]

10. On 21 September 2006, Allen executed an Employment Agreement Regarding Confidential Information, Intellectual Property and Noncompetition (the Allen Non-Competition and Confidentiality Agreement). (Am. Compl. ¶ 28; *see* Am. Compl. Ex. 2, ECF No. 10 [Allen Agt.].) The Allen Non-Competition and Confidentiality Agreement was executed in consideration of Allen's "receipt of an award of September 1, 2006 under the Cree, Inc. 2004 Long-Term Incentive Compensation Plan as an employee of Cree, Inc., a North Carolina corporation . . . and any other compensation or benefits paid to [Allen] by [Plaintiff] that may lawfully serve as additional consideration[.]" (Allen Agt. at 1.)

11. As to the confidentiality obligations provided for in the Allen Non-Competition and Confidentiality Agreement, Allen represented that he understood

> that during [his] employment [he] may have access to unpublished or otherwise confidential information relating to [Plaintiff], such as unpublished information relating to [Plaintiff's] business plans, products, manufacturing operations, research and development activities, finances, customers, vendors and personnel. Such

---

[2] The Amended Complaint was originally filed on 4 November 2024 with redactions. (ECF No. 10.) Thereafter, an unredacted Amended Complaint was filed under seal, (ECF No. 25), but did not contain the exhibits originally filed with the redacted Amended Complaint. As such, the Court cites to the exhibits located within the redacted Amended Complaint, (ECF No. 10.)

information, whether of a technical or non-technical nature, is referred to below as "Confidential Information." As used in this Agreement, that term also includes information disclosed to [Plaintiff] by third parties under an obligation to hold such information in confidence.

[He] will comply with all [Plaintiff's] policies and procedures concerning Confidential Information. [He] will not disclose Confidential Information to others except when authorized in performing [his] duties for [Plaintiff], and [he] will not use Confidential Information for any purpose other than performing [his] duties for [Plaintiff]. [He] will be bound by this Agreement with respect to Confidential Information learned during [his] employment, both for so long as [he] [is] employed and thereafter without limit, except that [his] obligation will end as to an item of information as such time as it becomes generally known to the public through no fault of [his].

(Allen Agt. at ¶ 1.) Additionally, Allen acknowledged that his obligations "will continue following any termination of [his] employment, whether voluntary or involuntary." (Allen Agt. at ¶ 12.)

### 2. Allen's Departure from Plaintiff

12. In October 2022, Allen notified Plaintiff that he "planned to resign his position with the company, effective October 14, 2022, and take a new position" with Onsemi. (Am. Compl. ¶ 34.)

13. Allen's departure spurred litigation, which was resolved through settlement. (Am. Compl. ¶ 35.) As a result of the settlement, Allen "represented and warranted that he would continue to comply with his confidentiality obligations perpetually." (Am. Compl. ¶ 36.) After the expiration of Allen's one-year noncompetition term, he "accepted employment as [O]nsemi's Chief Technology Officer for its Power Solutions Group." (Am. Compl. ¶ 37.)

### C. Van Brunt's Employment with Plaintiff

14. On 19 January 2013, Van Brunt executed his Employment Agreement Regarding Confidential Information, Intellectual Property and Noncompetition (the Van Brunt Non-Competition and Confidentiality Agreement). (Am. Compl. ¶ 46; *see* Am. Compl. Ex. 3, ECF No. 10 [Van Brunt Agt.].) The Van Brunt Non-Competition and Confidentiality Agreement "outlines Van Brunt's obligations concerning noncompetition, confidentiality, and intellectual property during and after his employment with" Plaintiff. (Am. Compl. ¶ 49.)

### 1. Van Brunt's Non-Competition and Confidentiality Agreement

15. As to his noncompetition obligations, the Van Brunt Non-Competition and Confidentiality Agreement provides that

> While employed by [Plaintiff], and for a period of one (1) year following the termination of [Van Brunt's] employment with [Plaintiff], [he] will not, without the express written consent of an authorized representative of [Plaintiff], (i) perform services within the Territory (as defined below) for any Competing Business (as defined below), whether as an employee, consultant, agent, contractor or in any other capacity, (ii) hold office as an officer or director or like position in any Competing Business or be the beneficial owner of an equity interest in a Competing Business, (iii) request any present or future customers or suppliers of [Plaintiff] to curtail or cancel their business with [Plaintiff], or (iv) induce or attempt to influence any employee of [Plaintiff] to terminate his or her employment with [Plaintiff]. These obligations will continue for the specified period regardless of whether the termination of [his] employment was voluntary or involuntary or with or without cause.

(Van Brunt Agt. at ¶ 11(a).)

16. The Van Brunt Non-Competition and Confidentiality Agreement defines "Competing Business" as

> any corporation, partnership, university, government agency or other entity or person (other than [Plaintiff]) which is engaged in Competing Activities (as defined below). "Competing Activities" means the

development, manufacture, marketing, distribution or sale of, or research directed to: (i) silicon carbide or A nitride materials for electronic applications, or for any other applications for which [Plaintiff] is selling such materials at the time of termination of my employment, or (ii) devices fabricated on or from such materials.

(Van Brunt Agt. at ¶ 11(d).)

17. "Territory" is defined in the Van Brunt Non-Competition and Confidentiality Agreement as

(i) throughout the world, but if such area is determined by judicial action to be too broad, then it shall mean (ii) within the continental United States, but if such area is determined by judicial action to be too broad, then it shall mean (iii) within any state in which [Plaintiff] is engaged in business, but if such area is determined by judicial action to be too broad, then it shall mean (iv) the State of North Carolina, but if such area is determined by judicial action to be too broad, then it shall mean (v) Durham County, Wake County, Orange County and Chatham County, North Carolina, but if such area is determined by judicial action to be too broad, then it shall mean (vi) the City of Durham, North Carolina.

(Van Brunt Agt. at ¶ 11(e).)

18. As to the confidentiality obligations provided for in the Van Brunt Non-Competition and Confidentiality Agreement, Van Brunt represented that he understood

that during [his] employment [he] may have access to unpublished or otherwise confidential information relating to [Plaintiff], such as unpublished information relating to [Plaintiff's] business plans, products, manufacturing operations, research and development activities, finances, customers, vendors and personnel. Such information, whether of a technical or non-technical nature, is referred to below as "Confidential Information." As used in this Agreement, that term also includes information disclosed to [Plaintiff] by third parties under an obligation to hold such information in confidence.

[He] will comply with all [Plaintiff's] policies and procedures concerning Confidential Information. [He] will not disclose Confidential

Information to others except when authorized in performing [his] duties for [Plaintiff], and [he] will not use Confidential Information for any purpose other than performing [his] duties for [Plaintiff]. [He] will be bound by this Agreement with respect to Confidential Information learned during [his] employment, both for so long as [he] [is] employed and thereafter without limit, except that [his] obligation will end as to an item of information as such time as it becomes generally known to the public through no fault of [his].

(Van Brunt Agt. at ¶ 1.) Additionally, Van Brunt acknowledged that his obligations "will continue following any termination of [his] employment, whether voluntary or involuntary." (Van Brunt Agt. at ¶ 12.)

19. Van Brunt was hired by Plaintiff as a Senior Manager in Plaintiff's Research Science unit, (Am. Compl. ¶ 39), and on 13 August 2023, Van Brunt was promoted to Director of that unit, being given the title "Director, Intelligent Systems Technology R&D[,]" (Am. Compl. ¶ 40). Through his work, Van Brunt "reported directly to [Plaintiff's] Chief Technology Officer[.]" (Am. Compl. ¶ 41.)

### 2. Van Brunt's Restricted Stock Units Agreement's Terms and Conditions

20. During his employment with Plaintiff, Van Brunt was granted Restricted Stock Units (RSUs) annually. (Am. Compl. ¶ 56.) These RSU grants were documented in Restricted Stock Unit Award Agreements (RSU Agreements), which incorporated certain terms and conditions (the Terms and Conditions). (Am. Compl. ¶¶ 57–58; *see* Am. Compl. Ex. 4 at ¶ 11, ECF No. 10 [RSU Agt. Terms & Conditions].)

21. The Terms and Conditions provide that Plaintiff may "cancel and cause to be forfeited any RSUs not previously vested or released under this Agreement if you

engage in any 'Detrimental Activity'[.]"  (RSU Agt. Terms & Conditions at ¶ 11.)  As it relates to Van Brunt, "Detrimental Activity" is defined therein as

> activity that breaches the terms of any restrictive covenants in any agreement between [Van Brunt] and [Plaintiff], including without limitation the most recent version of the Employment Agreement Regarding Confidential Information, Intellectual Property, and Noncompetition in effect for [Van Brunt] as of the relevant date.

(RSU Agt. Terms & Conditions at ¶ 11(b).)  The Terms and Conditions also state that

> if you engage in any Detrimental Activity prior to or within one (1) year after your Termination of Service, the Committee in its sole discretion may require you to pay [Plaintiff] the amount of all gain you realized from any vesting of the RSUs beginning six (6) months prior to your Termination of Service, provided that the Committee gives you notice of such requirement within  one (1) year after your Termination of Service. In that event, [Plaintiff] will be entitled to set off such amount against any amount [Plaintiff] owes to you, in addition to any other rights [Plaintiff] may have.

(RSU Agt. Terms & Conditions at ¶ 11.)  At all relevant times, Van Brunt "benefitted from continued vesting of his RSUs."  (Am. Compl. ¶ 62.)

### 3.    Van Brunt's Departure from Plaintiff

22.    On 3 September 2024, Van Brunt contacted Plaintiff's "legal department through retained counsel to inquire about whether [Plaintiff] would prepare a 'draft agreement' related to Van Brunt's employment with [Plaintiff]."  (Am. Compl. ¶ 63.) For several weeks thereafter, Plaintiff and Van Brunt, through counsel, "had conversations about whether Van Brunt would be accepting non-competitive employment with Onsemi such that he would not violate his non-competition or confidentiality obligations."  (Am. Compl. ¶ 66.)  While these conversations were

ongoing, "Van Brunt unilaterally stopped showing up for work" with Plaintiff. (Am. Compl. ¶ 67.)

23. Van Brunt "had already accepted employment with Onsemi when or shortly after he stopped reporting for work" with Plaintiff, and before his employment with Plaintiff ended. (Am. Compl. ¶ 71.) Van Brunt's counsel informed Plaintiff that "Van Brunt was offered and planned to accept employment at Onsemi as the Senior Director of the SiC device team for the Power Solutions Group, reporting directly to Allen, that group's Chief Technology Officer." (Am. Compl. ¶ 74.) Van Brunt's job responsibilities at Onsemi would include "managing a team of device design and process integration engineers[,]" and he would be working "on MOSFET technology," as he did with Plaintiff. (Am. Compl. ¶ 74.)

24. Though he had accepted employment with Onsemi, Van Brunt continued "his attempts to negotiate with [Plaintiff] to allow him to accept this" position with Onsemi. (Am. Compl. ¶ 76.) Around 25 September 2024, Plaintiff learned that "Van Brunt intended to work at [O]nsemi in the same position that he held" with Plaintiff. (Am. Compl. ¶ 77.)

25. At that time, Van Brunt had not returned to work with Plaintiff. (Am. Compl. ¶ 79.) As a result, Plaintiff notified Van Brunt, through counsel, on 26 September 2024 that Plaintiff "had considered Van Brunt to have voluntarily terminated his employment with" Plaintiff. (Am. Compl. ¶ 80.) The following day, Van Brunt engaged in a phone conversation with one of Plaintiff's founders, where Van Brunt indicated that "his 'mind is made up' and disclosed that he had 'already

accepted a position with [O]nsemi,' where he would 'be reporting directly to Scott Allen[.]' " (Am. Compl. ¶ 81.)

26. On the same call, Van Brunt represented his intention "to attend International Conference of Silicon Carbide and Related Materials ('ICSCRM'), the preeminent global conference on silicon carbide." (Am. Compl. ¶ 82.) Originally, Van Brunt was scheduled to attend this conference on behalf of Plaintiff, though Plaintiff notified Van Brunt following his resignation that he "would no longer be attending on [Plaintiff's] behalf." (Am. Compl. ¶ 84.) Van Brunt ultimately attended the conference "as an [O]nsemi representative, and relayed to others at the ICSCRM that he was now an [O]nsemi employee." (Am. Compl. ¶ 86.)

27. As of 14 October 2024, Van Brunt retained his laptop issued to him by Plaintiff, (Am. Compl. ¶ 96), and did not return this laptop until 16 October 2024, (Am. Compl. ¶ 97). A "forensic analysis of Van Brunt's company-issued devices is ongoing." (Am. Compl. ¶ 98.)

## III. PROCEDURAL BACKGROUND

28. On 27 September 2024, Plaintiff initiated this action with the filing of Plaintiff's Complaint and Motion for Injunctive Relief against all Defendants. (ECF No. 3.) On the same day, Plaintiff sought a temporary restraining order against all Defendants, (ECF No. 4), which was subsequently denied on 30 October 2024, (ECF No. 9).

29. Thereafter, on 4 November 2024, Plaintiff filed its Amended Complaint, asserting nine (9) claims, including: (1) preliminary and permanent injunction

against all Defendants (Count One), (Am. Compl. ¶¶ 115–26); (2) breach of contract by Van Brunt related to the Van Brunt Non-Competition and Confidentiality Agreement (Count Two), (Am. Compl. ¶¶ 127–35); (3) breach of contract by Van Brunt of the RSU Agreement (Count Three), (Am. Compl. ¶¶ 136–41); (4) breach of contract by Allen related to the Allen Non-Competition and Confidentiality Agreement (Count Four), (Am. Compl. ¶¶ 142–48); (5) wrongful interference with contractual relationships by Onsemi and Allen as to the Van Brunt Non-Competition and Confidentiality Agreement (Count Five), (Am. Compl. ¶¶ 149–59); (6) wrongful interference with contractual relationships by Onsemi as to the Allen Non-Competition and Confidentiality Agreement (Count Six), (Am. Compl. ¶¶ 160–67); (7) misappropriation of trade secrets against all Defendants (Count Seven), (Am. Compl. ¶¶ 168–73); (8) unfair and deceptive trade practices against all Defendants (Count Eight), (Am. Compl. ¶¶ 174–77); and (9) breach of the duty of loyalty by Van Brunt (Count Nine), (Am. Compl. ¶¶ 178–85).

30. On 4 December 2024, Defendants brought the Motion, which was followed by fulsome briefing. On 25 February 2025, the Court held a hearing on the Motion (the Hearing), where all parties were represented by counsel. (*See* ECF No. 29.)

31. The Motion is ripe for resolution.

## IV.    LEGAL STANDARD

32. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Amended Complaint in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The

Court's inquiry is "whether, as a matter of law, the allegations of the Complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted).

33. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the Complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (citation omitted). Moreover, the Court "may properly consider documents which are the subject of the Complaint and to which the Complaint specifically refers even though they are presented by the Defendants." *Oberlin Capital, L.P.*, 147 N.C. App. at 60 (2001) (citation omitted).

34. Our Supreme Court has observed that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the Complaint on its face reveals that no law supports the Plaintiff's claim; (2) the Complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the Complaint discloses some fact that necessarily defeats the Plaintiff's claim.'" *Corwin v. British Am.*

*Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).  The standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of a Complaint in the context of complex commercial litigation."  *Id.* at 615 n.7 (citations omitted).

## V.     ANALYSIS

35.     Defendants have moved to dismiss each claim asserted against them, and the Court addresses each claim in turn.

### A.     Count One: Preliminary and Permanent Injunction

36.     Plaintiff has asserted Count One against all Defendants, seeking a preliminary and permanent injunction which would enjoin Defendants from "violating the Van Brunt Non-Competition and Confidentiality Agreement and the Allen Non-Competition and Confidentiality Agreement."   (Am. Compl. ¶ 126.) Defendants move to dismiss Count One for failure to state a claim, arguing that "[t]hese 'claims' are not legally recognized cause[s] of action, but are instead a request for a remedy." (Defs.' Memo. Supp. Mot. 24, ECF No. 17 [Memo. Supp.].)

37.     "[I]njunctions are remedies, not independent causes of action." *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *18 (N.C. Super. Ct. July 26, 2018).  Thus, Defendants correctly contend that a purported cause of action for a preliminary or permanent injunction fails to state a claim. *See Sloan v. Inolife Techs., Inc.*, 2017 NCBC LEXIS 45, at *11–12 (N.C. Super. Ct. May 22, 2017) (dismissing purported "claim for damages").

38.     Accordingly, for purposes of clarity, the Court **GRANTS** the Motion in part to the extent it seeks dismissal of Count One for preliminary or permanent injunction. The Court renders this decision without prejudice to Plaintiff's ability to pursue whatever remedies it may be entitled to by law or equity, which the Court construes to include a request for preliminary injunctive relief. The Court will assess a motion for preliminary injunction, if filed, on its own merits and not as part of this Order.

### B.     Counts Two, Three, and Four: Breach of Contract

39.     Plaintiff has asserted three breach of contract claims—Count Two against Van Brunt related to his alleged breach of the Van Brunt Non-Competition and Confidentiality Agreement, (Am. Compl ¶¶ 127–35), Count Three against Van Brunt related to his alleged breach of his RSU Agreement, (Am. Compl. ¶¶ 136–41), and Count Four against Allen related to his alleged breach of the Allen Non-Competition and Confidentiality Agreement, (Am. Compl. ¶¶ 142–48).

40.     To properly plead a breach of contract claim, a plaintiff need only allege "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). When these elements are alleged, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)," and our appellate courts routinely reverse trial court orders that require anything more. *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004). "[S]tating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019).

41.     The Court addresses each claim in turn.

### 1.    Count Two: Breach of the Van Brunt Non-Competition and Confidentiality Agreement

42.    Plaintiff alleges that the Van Brunt Non-Competition and Confidentiality Agreement is "an enforceable written Non-Competition and Confidentiality Agreement supported by valid consideration[,]" (Am. Compl. ¶ 128), and that Van Brunt breached this agreement by "accepting and beginning employment with [O]nsemi and disclosing and using Wolfspeed's confidential information and trade secrets at [O]nsemi." (Am. Compl. ¶ 133).

43.    First, Defendants seek dismissal of Count Two to the extent it is based on the non-compete restrictive covenant found within the Van Brunt Non-Competition and Confidentiality Agreement, arguing it is unenforceable as it "prevents Van Brunt from working for a competitor in any capacity[.]" (Memo. Supp. 9.)  The Court agrees.

44.    As an initial matter, "[i]t is well established that '[a] covenant in an employment agreement providing that an employee will not compete with his former employer is not viewed favorably in modern law.' " *Sterling Title Co. v. Martin*, 266 N.C. App. 593, 597 (2019) (quoting *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 311 (1994)).  Nevertheless, a covenant not to compete will be enforced if it is "(1) in writing; (2) reasonable as to time and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) designed to protect a legitimate business interest of the employer." *Young v. Mastrom, Inc.*, 99 N.C. App. 120, 122–23 *disc. review denied*, 327 N.C. 488 (1990).  "The reasonableness of a non-competition covenant is a matter of law for the court to decide." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655 (2009).

45.     Paragraph 11(a) provides that Van Brunt may not

> While employed by [Plaintiff], and for a period of one (1) year following the termination of [Van Brunt's] employment with [Plaintiff], [he] will not, without the express written consent of an authorized representative of [Plaintiff], (i) perform services within the Territory (as defined below) for any Competing Business (as defined below), whether as an employee, consultant, agent, contractor or in any other capacity, (ii) hold office as an officer or director or like position in any Competing Business or be the beneficial owner of an equity interest in a Competing Business, (iii) request any present or future customers or suppliers of [Plaintiff] to curtail or cancel their business with [Plaintiff], or (iv) induce or attempt to influence any employee of [Plaintiff] to terminate his or her employment with [Plaintiff]. These obligations will continue for the specified period regardless of whether the termination of [his] employment was voluntary or involuntary or with or without cause.

(Van Brunt Agt. at ¶ 11(a).)

46.     Paragraph 11(a) unreasonably restricts Van Brunt's business activities because it prohibits him for a period of one year following his termination from Wolfspeed from performing services, within the territory provided, for any Competing Business, as defined therein, whether as an employee, consultant, agent, contractor *or in any other capacity*, (*see* Am. Compl. ¶ 11(a)).  This paragraph restricts Van Brunt's employment opportunities without regard to whether Van Brunt is employed in a similar position at that business or the services he provides at that business are the same as or similar to those he provided at Wolfspeed.  *See, e.g., VisionAIR, Inc. v. James*, 167 N.C. App. 504, 509 (2004) (holding unenforceable a restriction that prevented the employee "from doing even wholly unrelated work at any firm similar to [the employer]"); *Hartman*, 117 N.C. App. at 317 (holding unenforceable a restriction "that, rather than attempting to prevent [the former employee] from competing for . . . business, it require[d] [the former employee] to have no association

whatsoever with any business that provides [similar] services."); *Med. Staffing Network,* 194 N.C. App. at 656 (holding unenforceable restrictions that "prohibit the employee from engaging in future work that is distinct from the duties actually performed by the employee"); *Window Gang Ventures, Corp. v. Salinas*, 2019 NCBC LEXIS 24, at *20 (N.C. Super. Ct. Apr. 2, 2019) (holding unenforceable a provision restricting employees from working for competitors "in any capacity whatsoever—not simply in roles which would cause competitive harm to [the employer] or only in divisions of those businesses which compete with [the employer]").

47.     For this reason, the Court **GRANTS** the Motion in part to the extent Count Two is based on the non-competition restrictive covenant detailed in paragraph 11(a) of the Van Brunt Non-Competition and Confidentiality Agreement.

48.     Second, Defendants seek dismissal of Count Two to the extent it is premised on the confidentiality provision contained within the Van Brunt Non-Competition and Confidentiality Agreement.  (*See* Memo. Supp. 11; *see also* Van Brunt Agt. at ¶ 1).

49.     When assessing the validity of restrictive covenants in an employment agreement, North Carolina law distinguishes between restrictive covenants—which restrain trade—and confidentiality agreements—which are only meant to prevent the disclosure or use of confidential information.  *See Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at **10 (N.C. Super. Ct. Oct. 15, 2015).

50.     "Unlike non-competition and non-solicitation provisions, a nondisclosure provision is generally not considered to be a restraint on trade."  *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at **24 (N.C. Super. Ct. Mar. 21,

2023). Accordingly, a "nondisclosure provision is not subjected to the same level of scrutiny as the non-competition and non-solicitation provisions" of an employment agreement. *Id.* at **25. For this reason, "[s]uch agreements may, therefore, be upheld even though the agreement is unlimited as to time and area[.]" *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at **31 (N.C. Super. Ct. Nov. 3, 2011).

51. Defendants argue Wolfspeed, through the Amended Complaint, "provides no details about what information was allegedly accessed, taken or shared, who it was allegedly shared with, or when it was taken or shared." (Memo. Supp. 11.) Plaintiff, in response, argues its allegations are more than sufficient, as it clearly alleges "the circumstantial events it is aware of that raise an inference that the disclosure of Wolfspeed's confidential information has occurred." (Wolfspeed Inc.'s Opp'n Mot. 13, ECF No. 20 [Memo Opp.].)

52. The Court agrees with Plaintiff as to its claim based on the alleged breach of the confidentiality provision. The Amended Complaint alleges not only that Van Brunt "retained his Wolfspeed issued laptop" and did not return this laptop, "on which Van Brunt may have access to Wolfspeed's sensitive and proprietary information, until October 16, 2024[,]" (Am. Compl. ¶¶ 96–97), nearly a month after he accepted employment with Onsemi, (Am. Compl. ¶ 73), but also that Van Brunt "accessed, attempted to access, or had access to a large volume of highly confidential data that contained Wolfspeed's most sensitive information, including trade secrets[,]" (Am. Compl. ¶ 98). The Court concludes that these allegations are marginally sufficient to state a claim for breach under North Carolina law. *Poor,* 138

N.C. App. at 26 (the elements of a breach of contract claim are "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract.").

53. Therefore, the Court **DENIES** the Motion in part as to Count Two to the extent it is based on the confidentiality provision found within the Van Brunt Non-Competition and Confidentiality Agreement.

### 2. Count Three: Breach of Van Brunt's RSU Agreement's Terms and Conditions

54. Plaintiff alleges that Van Brunt "agreed and acknowledged by his signature" that his RSU Agreement incorporates Terms and Conditions, (Am. Compl. ¶ 58), and that Van Brunt has breached this agreement by "accepting employment with [O]nsemi, attending ICSCRM as a representation of [O]nsemi, and disclosing Wolfspeed's trade secrets and other confidential information[,]" (Am. Compl. ¶ 137), as this constitutes "Detrimental Activity" as defined in the RSU Agreement's Terms and Conditions, (*see* RSU Agt. Terms & Conditions at ¶ 11(b)). Further, Plaintiff alleges that it satisfied the conditions precedent required in order to seek relief. (Am. Compl. ¶ 140.)

55. Neither side explicitly addresses the merits of Count Three in their respective briefs, and given the allegations contained in the Amended Complaint, the Court finds these sufficient to plead a breach of contract claim under North Carolina law. *See Poor,* 138 N.C. App. at 26.

56. Therefore, the Court **DENIES** the Motion in part as to Count Three.

### 3. Count Four: Breach of the Allen Non-Competition and Confidentiality Agreement

57.     Defendants contend Plaintiff has failed to adequately state a claim as to Count Four for breach of contract by Allen, specifically related to the confidentiality provision found within the Allen Non-Competition and Confidentiality Agreement. (Memo. Supp. 19.)  Defendants argue that "Plaintiff has not adequately alleged that Allen disclosed its confidential or trade secret information or that Allen breached the confidentiality provision" of the Allen Non-Competition and Confidentiality Agreement.  (Memo. Supp. 19.)

58.     Notwithstanding Defendants' arguments, the Court concludes that, at this early stage of the proceeding, Plaintiff has adequately pled a claim for breach of contract based on the Allen Non-Competition and Confidentiality Agreement, alleging that it is an enforceable agreement, (Am. Compl. ¶ 143), and that Allen breached this agreement by "using and disclosing Wolfspeed's confidential information in concert with Van Brunt and [O]nsemi, in violation of his ongoing and perpetual confidentiality obligations to Wolfspeed[,]" (Am. Compl. ¶ 146).  *See Woolard,* 166 N.C. App. at 134.

59.     Therefore, the Motion is **DENIED** in part as to Count Four.

## C.     Counts Five and Six: Wrongful Interference with Contractual Relationships

60.     Plaintiff has asserted two wrongful interference with contractual relationship claims—Count Five against Onsemi and Allen as to their alleged inducement of Van Brunt to breach the Van Brunt Non-Competition and Confidentiality Agreement, and Count Six against Onsemi as to its alleged

inducement of Allen to breach the Allen Non-Competition and Confidentiality Agreement. (Am. Compl. ¶¶ 149–67)

61. As an initial matter, the Court has held herein that the non-competition provision within the Van Brunt Non-Competition and Confidentiality Agreement is unenforceable as a matter of law. As a result, there can be no related wrongful interference with contractual relationship claim against Van Brunt to the extent it is premised on that provision. Therefore, the Motion is **GRANTED** in part as to Count Five to the limited extent it is based on the allegation that Onsemi and Allen tortiously interfered with Van Brunt's agreement by inducing him to breach the non-competition provision, and Count Five is **DISMISSED** to that limited extent.

62. As a result, the Court narrows its analysis to whether Plaintiff has failed to state a cause of action as to Counts Five and Six to the extent they rely on the alleged breaches of the confidentiality provisions found in Van Brunt's and Allen's respective Non-Competition and Confidentiality Agreements.

63. To state a claim for tortious interference with contract, Plaintiff must allege:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (emphasis added). As this Court has previously noted, "[t]he pleading standards for a tortious interference with contract claim are strict." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *15

(N.C. Super. Ct. Feb. 8, 2017); *see also Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at *47 (N.C. Super. Ct. May 8, 2018); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).

64.     While Defendants' arguments related to Counts Five and Six are similar, the Court will address each claim separately, as the facts and circumstances related to the alleged inducement of Van Brunt and Allen to breach the confidentiality provisions in their respective Non-Competition and Confidentiality Agreements are distinct from one another.

### 1.     Count Five: Wrongful Interference with Contractual Relationships against Onsemi and Allen

65.     Plaintiff alleges that Onsemi and Allen have wrongfully interfered with Van Brunt's contractual relationship with Wolfspeed as it relates to Van Brunt's confidentiality obligations contained within the Van Brunt Non-Competition and Confidentiality Agreement.  (*See* Am. Compl. ¶¶ 149–59.)

66.     Defendants make several arguments in support of dismissal of Count Five; however, upon review of the allegations within the Amended Complaint, the Court finds that Plaintiff has sufficiently alleged a wrongful interference with contract claim against Onsemi and Allen as to Count Five.  Plaintiff has alleged that the "Van Brunt Non-Competition and Confidentiality Agreement is a valid and enforceable contract between Wolfspeed and Van Brunt"; that, upon information and belief, "[O]nsemi and Allen are aware of the Van Brunt Non-Competition and Confidentiality Agreement"; and that "[O]nsemi and Allen have taken efforts to . . .

cause Van Brunt to disclose or use Wolfspeed's confidential information and trade secrets in violation of the terms of the Van Brunt Non-Competition and Confidentiality Agreement." (Am. Compl. ¶¶ 150–51, 155.) Lastly, Plaintiff has alleged that "[O]nsemi's and Allen's interference was neither justified nor privileged[,]" and Plaintiff has "been damaged by [O]nsemi's and Allen's unjustified interference[.]" (Am. Compl. ¶¶ 157–58.) These allegations are sufficient at this stage to state a claim for wrongful interference with contractual relations.

67. Therefore, the Court **DENIES** the Motion in part as to Count Five to the extent Count Five is based on the confidentiality provision within the Van Brunt Non-Competition and Confidentiality Agreement.

### 2. Count Six: Wrongful Interference with Contractual Relationships against Onsemi

68. Plaintiff alleges that Onsemi has wrongfully interfered with Allen's contractual relationship with Wolfspeed as it relates to Allen's confidentiality obligations contained within the Allen Non-Competition and Confidentiality Agreement. (*See* Am. Compl. ¶¶ 160–67.)

69. Once again, Defendants make several arguments in support of dismissal of Count Six; however, upon review of the allegations within the Amended Complaint, the Court finds that Plaintiff has sufficiently alleged a wrongful interference with contract claim against Onsemi as to Count Six. Plaintiff has alleged that the "Allen Non-Competition and Confidentiality Agreement is a valid and enforceable contract between Wolfspeed and Allen[;]" that through its participation in previous litigation with Allen, "[O]nsemi was aware of the Allen Non-Competition and Confidentiality

Agreement"; and that "[O]nsemi has taken efforts to induce Allen to violate the Allen Non-Competition and Confidentiality Agreement by encouraging Allen to disclose his knowledge of Wolfspeed's intellectual property and trade secrets[.]" (Am. Compl. ¶¶ 161–62; 164.) Lastly, Plaintiff alleges that "[O]nsemi's interference with the Allen Non-Competition and Confidentiality Agreement was neither justified nor privileged[,]" and Plaintiff has been "damaged by [O]nsemi's unjustified interference[.]" (Am. Compl. ¶¶ 165–66.) These allegations are sufficient at this stage to state a claim for wrongful interference with contractual relations.

70. Therefore, the Court **DENIES** the Motion in part as to Count Six.

**D.** **Count Seven: Misappropriation of Trade Secrets**

71. Plaintiff alleges against all Defendants circumstantial evidence which it believes demonstrates that "Allen, Van Brunt, and [O]nsemi misappropriated Wolfspeed's trade secrets[.]" (Am. Compl. ¶ 169.)

72. The North Carolina Trade Secrets Protection Act defines a trade secret as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> > a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
> >
> > b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3). "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to

delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (citation omitted).

73.     Defendants seek dismissal of Count Seven, arguing Plaintiff has failed to identify both the trade secrets at issue, and any acts of misappropriation thereof, with sufficient particularity. (Memo. Supp. 15–17.) Defendants contend that Plaintiff's allegations are limited to basic statements and allegations that are "upon information and belief[,]" which Defendants argue is insufficient to state a claim. (Memo. Supp. 16.)

74.     Plaintiff rebuts both arguments raised by Defendants, arguing that the Amended Complaint contains "detailed trade secret allegations," (Memo. Opp. 14 (citing Am. Compl. ¶¶ 19, 41)), as well as sufficient allegations of circumstantial evidence pertaining to the alleged acts of misappropriation, (Memo. Opp. 17 (citing Am. Compl. ¶¶ 63–71, 74–75, 85–88)).

75.     First, as to the trade secrets Plaintiff contends have been misappropriated in this case, the Court finds that, at this stage, Plaintiff has sufficiently identified such trade secrets in paragraph 41 of the Amended Complaint. Second, as to the alleged acts of misappropriation, the Court finds it necessary given the allegations in the Amended Complaint to review such allegations as to each Defendant individually.

76.     As to Van Brunt, the Court finds that the allegation that Van Brunt "[u]pon information and belief, [ ] accessed confidential trade secret information, or attempted to access, or had access to such information after he had" accepted and

began his tenure at Onsemi, (Am. Compl. ¶¶ 171.l.–m.), paired with the allegations that he "retained his Wolfspeed-issued laptop[,]" until 16 October 2024, (Am. Compl. ¶¶ 96–97), and through retention of this laptop "accessed, attempted to access, or had access to a large volume of highly confidential data that contained Wolfspeed's most sensitive information, including trade secrets[,]" (Am. Compl. ¶ 98), are minimally sufficient at this stage to state a claim for misappropriation of trade secrets against Van Brunt.

77.     Additionally, as to Onsemi, Plaintiff has alleged that Van Brunt "accepted employment with [O]nsemi before September 16, 2024[,]" (Am. Compl. ¶ 73), Van Brunt "reported to work at [O]nsemi's facility in Raleigh during the week of October 14, 2024[,]" (Am. Compl. ¶ 89), and "Van Brunt is currently employed by [O]nsemi[,]" (Am. Compl. ¶ 90). These allegations pertaining to the timing of Van Brunt's employment with Onsemi, paired with the allegations that Van Brunt "retained his Wolfspeed-issued laptop[,]" until 16 October 2024, (Am. Compl. ¶¶ 96–97), are sufficient to state a claim against Onsemi for misappropriation of trade secrets.

78.     Therefore, the Court **DENIES** the Motion in part as to Count Seven to the extent it is asserted against Van Brunt and Onsemi.

79.     However, as to Allen, the Court finds Plaintiff has failed to sufficiently allege acts of misappropriation. Notably, there is not a single allegation within the Amended Complaint that Allen accessed, had access to, or took with him upon termination of his employment with Plaintiff, any trade secret information. The

allegations of misappropriation are specifically directed at Van Brunt, which the Court detailed above. (*See supra* ¶ 74.) As such, Plaintiff has failed to state a claim for misappropriation of trade secrets against Allen.

80. Therefore, the Court **GRANTS** the Motion in part as to Count Seven to the extent it is asserted against Allen, and Count Seven is **DISMISSED** to that limited extent.

### E. Count Eight: Unfair and Deceptive Trade Practices

81. Plaintiff has asserted Count Eight against all Defendants, alleging that Defendants have engaged in "an unfair and deceptive trade practice and unfair method of competition by misappropriating Wolfspeed's confidential information and trade secrets." (Am. Compl. ¶ 175.)

82. A claim for unfair and deceptive trade practices under the Unfair and Deceptive Trade Practices Act (UDTPA), N.C.G.S. § 75-1.1 *et seq.*, requires proof of "(1) an unfair or deceptive trade practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the [plaintiff]." *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738 (2008). A claim for misappropriation of trade secrets may support a claim for violation of the UDTPA if the misappropriation satisfies the three required elements for an unfair trade practice claim. *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172 (1992).

83. Defendants' sole argument in support of dismissal of Count Eight is that "Plaintiff's UDTPA claims are based solely upon Plaintiff's failed misappropriation

claim[,]" and as Defendants believe Plaintiff has failed to state a claim as to Count Seven, Count Eight should likewise be dismissed.

84.     First, the Court agrees with Defendants' contention as to Allen, as Count Seven has been dismissed as to Allen, and, as a result, there is no underlying conduct which supports the UDTPA claim against him.   However, the Court has allowed Count Seven to survive as to Van Brunt and Onsemi, and, as a result, to the extent Count Eight is based on the same conduct alleged against Van Brunt and Onsemi in Count Seven, this claim survives.

85.     Therefore, the Court **GRANTS** the Motion in part as to Count Eight to the extent it is alleged against Allen, and Count Eight is **DISMISSED** to that limited extent.   However, the Court **DENIES** the Motion in part as to Count Eight to the extent it is alleged against Van Brunt and Onsemi.

## F.     <u>Count Nine: Breach of Duty of Loyalty</u>

86.     Plaintiff alleges inartfully that Van Brunt breached a  duty of loyalty, in that "as a research scientist," he "owed a fiduciary duty of loyalty to Wolfspeed, which required him to act in the best interests of Wolfspeed and not to engage in activities that would harm Wolfspeed's business or competitive standing[,]" (Am. Compl. ¶¶ 179–80), and that he breached that duty through the conduct discussed herein, (*see* Am. Compl. ¶¶ 181–82).

87.     First, Defendants correctly note that the North Carolina Supreme Court has "distinguished claims for breach of a duty of loyalty from those claiming breach of fiduciary duty."  (Memo. Supp. 14 n.4.)  In *Dalton v. Camp*, the North Carolina

Supreme Court held that, outside the purview of a fiduciary relationship, our State does not recognize an independent tort for breach of duty of loyalty by an at-will employee. 353 N.C. 647, 652 (2001).

88. Assuming *arguendo* that Count Nine is a breach of fiduciary duty claim inadvertently brought as a duty of loyalty claim, Defendants also seek dismissal of Count Nine on the basis that Plaintiff has failed to allege that Van Brunt owed any fiduciary duty to Plaintiff through his employment as a research scientist. (Memo. Supp. 14.)

89. To state a claim for breach of fiduciary duty, Plaintiff must plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635 (2016) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)). A fiduciary relationship may arise by operation of law—a de jure fiduciary relationship—or based on the facts and circumstances surrounding the underlying relationship between the parties—a de facto fiduciary relationship. *Id.* at 635–36.

90. In this case, Plaintiff alleges generally that Van Brunt "owed a fiduciary duty of loyalty" while working at Wolfspeed. (Am. Compl. ¶ 179.) However, there are no allegations that Van Brunt was an officer of Wolfspeed, such that a de jure fiduciary relationship existed between the two. Rather, Plaintiff alleges that Van

Brunt was a "research scientist[,]" and without more, this allegation is insufficient to establish a de jure fiduciary relationship. Additionally, there are no allegations that Van Brunt exercised any dominion or control over Wolfspeed, such that he was a de facto fiduciary of Wolfspeed.

91. As a result, Plaintiff has failed to allege a fiduciary relationship between itself and Van Brunt, and, as a result, its breach of duty of loyalty claim cannot survive.

92. Therefore, the Court **GRANTS** the Motion in part as to Count Nine, and that claim is **DISMISSED**.

## VI. CONCLUSION

93. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion, as follows:

a. The Motion is **GRANTED** in part as to Count One for preliminary and permanent injunction, and that claim is **DISMISSED** without prejudice to Plaintiff seeking such relief through appropriate means;

b. The Motion is **GRANTED** in part as to Count Two to the extent it is based on the non-competition provision found in the Van Brunt Non-Competition and Confidentiality Agreement, and Count Two is **DISMISSED** with prejudice to that limited extent;

c.      The Motion is **DENIED** in part as to Count Two for breach of contract to the extent it is based on the confidentiality provision found in the Van Brunt Non-Competition and Confidentiality Agreement;

d.      The Motion is **DENIED** in part as to Count Three for breach of the RSU Agreement's Terms and Conditions to the extent that claim is based on the confidentiality provision of the Van Brunt Non-Competition and Confidentiality Agreement;

e.      The Motion is **DENIED** in part as to Count Four for breach of contract related to the confidentiality provision of the Allen Non-Competition and Confidentiality Agreement;

f.      The Motion is **GRANTED** in part as to Count Five to the extent it is premised on the non-compete provision of the Van Brunt Non-Competition and Confidentiality Agreement and to that extent the claim is **DISMISSED** with prejudice.  Otherwise, the Motion is **DENIED** in part as to Count Five;

g.      The Motion is **DENIED** in part as to Count Six;

h.      The Motion is **DENIED** in part as to Count Seven for misappropriation of trade secrets as to Van Brunt and Onsemi, and the Motion is **GRANTED** in part as to Count Seven as to Allen, and Count Seven is **DISMISSED** with prejudice as to Allen;

i.      The Motion is **DENIED** in part as to Count Eight for violation of the UDTPA as to Van Brunt and Onsemi to the extent the claim is based

on Van Brunt's alleged misappropriation of trade secrets; but is **GRANTED** in part as to Count Eight as to Allen, and Count Eight is **DISMISSED** with prejudice as to Allen; and

j.       The Motion is **GRANTED** in part as to Count Nine for breach of the duty of loyalty, and that claim is **DISMISSED** with prejudice.

**IT IS SO ORDERED**, this the 2nd day of April, 2025.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases